IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| United States of America, | ) | No. 8-19-cr-00181-DCC-7 |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Eddie Lee Childs, Jr., | ) | |
| | ) | |

This matter comes before the Court on Defendant's Motion for Bond.  ECF No. 596.

**BACKGROUND**

In February 2019, the Grand Jury returned a 22-count Indictment, which alleged various financial, drug, and firearm offenses against eleven defendants.  Defendant Childs was indicted for Conspiracy to Possess with Intent to Distribute Controlled Substances ("Count 1"), Interstate Travel and Transportation in Aid of Drug Trafficking Business ("Count 11"), Possession with Intent to Distribute and Distribution and Heroin ("Count 12"), and Unlawful Use of a Communication Facility ("Count 21").  ECF No. 41.  On February 26, 2019, Defendant was arraigned before United States Magistrate Judge Jacquelyn D. Austin, and Judge Austin set a $25,000 unsecured bond.  ECF No. 58.  In addition to the standard conditions of release, Judge Austin ordered that Defendant be subject to home detention with GPS monitoring.  *Id.*

On January 2, 2020, Defendant Childs signed a plea agreement and entered a guilty plea to Count 1 of the Superseding Indictment.  ECF Nos. 488–90.  The Court revoked Defendant's bond pursuant to the MDA, and Defendant was taken into custody.  ECF No. 491.  Thereafter, the United States Probation Office ("USPO") prepared a Presentence Report ("PSR").  The PSR calculates Defendant's sentencing guideline range as 46 to 57 months.  Although Count 1 of the Superseding Indictment carries a mandatory minimum sentence of 10 years of imprisonment, Defendant is eligible for the Safety Valve, which permits the Court to impose a sentence below the mandatory

1

minimum.  Defendant is currently awaiting sentencing.  On April 17, 2020, Defendant filed a

Motion for Bond, seeking release on bond pending sentencing in light of the COVID-19 pandemic.

ECF No. 596.  The Government filed a Response in Opposition.  ECF No. 598.

## APPLICABLE LAW

"Prior to 1990, a defendant could be released pending sentencing if a judicial officer found

by clear and convincing evidence that the defendant was 'not likely to flee or pose a danger to the

safety of any other person or the community[.]'"  *United States v. Goforth*, 546 F.3d 712, 713 (4th

Cir. 2008) (quoting 18 U.S.C. § 3143(a) (1988) (amended 1990)).  "If the judicial officer did not

make such a finding, the defendant was detained."  *Id.*  "Against this backdrop, Congress adopted

the Mandatory Detention Act of 1990."  *Id.*  The MDA requires a judge to order a defendant

detained pending sentencing if the defendant is found guilty of: "(A) a crime of violence, a

violation of [18 U.S.C. §] 1591, or an offense listed in [18 U.S.C. §] 2332b(g)(5)(B) for which a

maximum term of imprisonment of 10 years or more is prescribed; (B) an offense for which the

maximum sentence is life imprisonment or death; [and] (C) an offense for which a maximum term

of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled

Substances Import and Export Act, or chapter 705 of title 46."  18 U.S.C. §§ 3142(f)(1)(A)–(C),

3143(a)(2) (internal citations omitted).

Detention pending sentencing in these cases is mandatory with three exceptions.  *Goforth*,

546 F.3d at 713.  "Two of the exceptions are based on the presence of specified conditions: (1) if

the judicial officer finds a substantial likelihood that a motion for acquittal or new trial will be

granted, or (2) if an attorney for the government recommends no sentence of imprisonment be

imposed."  *Id.* (citing 18 U.S.C. § 3143(a)(2)(A)).  Additionally, the MDA contains a "more

generalized exception to mandatory detention."  *Id.*  This third exception permits the Court to

release a defendant when it "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community" and finds "that there are exceptional reasons why such person's detention would not be appropriate."   18 U.S.C. §§ 3143(a)(1), 3145(c).

The Fourth Circuit Court of Appeals has not issued any opinions that provide guidance to district courts interpreting the "exceptional reasons" language of the MDA.  Generally, courts have strictly construed this language and declined to make an "exceptional reasons" finding when presented with the issue.  Indeed, "Courts generally have defined 'exceptional reasons' as circumstances which are clearly out of the ordinary, uncommon, or rare."  *United States v. Vilaiphone*, No. 3:08-cr-232, 2009 WL 412958, at *2 (W.D.N.C. Feb. 18, 2009) (internal quotation omitted) (citations omitted).  However, district courts within the Fourth Circuit have found "exceptional reasons" in several cases.  *See, e.g., United States v. Franklin*, 843 F. Supp. 2d 620, 622–24 (W.D.N.C. 2012) (finding "exceptional reasons" when the defendant was scheduled for arthroscopic surgery and the defendant's son suffered from a variety of mental conditions that caused him to be violent to other family members); *United States v. Price*, 618 F. Supp. 2d 473, 483 (W.D.N.C. 2008) (finding "exceptional reasons" to permit a pregnant defendant suffering from a condition called "placenta previa" to remain on bond).

## DISCUSSION

On December 31, 2019, Chinese health officials informed the World Health Organization ("WHO") about a cluster of 41 patients with a mysterious form of pneumonia that causes fever and difficulty breathing.  Holly Secon, Aylin Woodward & Dave Masher, *A Comprehensive Timeline of the New Coronavirus Pandemic, From China's First COVID-19 Case to the Present*, BUSINESS INSIDER   (April   1,   2020),   https://www.businessinsider.com/coronavirus-pandemic-timeline-

history-major-events-2020-3.   Most of these individuals were connected to Huanan Seafood

Wholesale Market, which was a prominent "wet market"[1] in Wuhan, China.  *Id.*  On January 7,

2020, Chinese authorities identified the source of this mysterious respiratory disease as a novel

type of coronavirus later named COVID-19.  *Id.*  Thereafter, COVID-19 rapidly spread among the

Chinese population and beyond the Chinese borders.  *Id.*  On January 20, 2020, the first case of

COVID-19 was reported in a 35-year-old man in Snohomish County, Washington who had been

evacuated from Wuhan, China.  *Id.*  In recognition of the seriousness of COVID-19, the WHO

declared a "public-health emergency of international concern" on January 30, 2020.  *Id.*  The WHO

later declared the outbreak a pandemic on March 11, 2020.  *Id.*

Over the past month, COVID-19 has spread quickly across the United States, leading

President Trump to declare a national emergency on March 13, 2020.  *Id.*  In response, a substantial

majority of citizens of the United States are under "stay at home" or "shelter in place" orders from

state and local authorities.  *Id.*  Indeed, as of April 3, 2020, "at least 311 million people in at least

41 states, three counties, eight cities, the District of Columbia and Puerto Rico are being urged to

stay at home."  Sarah Mervosh, Denise Lu & Vanessa Swales, *See Which States and Cities Have*

*Told Residents to Stay at Home*, THE NEW YORK TIMES (April 3, 2020), https://www.nytimes

.com/interactive/2020/us/coronavirus-stay-at-home-order.html.   These orders typically prohibit

people from leaving their homes unless they are essential workers, such as healthcare professionals

and law enforcement officers, or need to engage in essential activities such as buying groceries or

picking up medication from a pharmacy.  *See id.*  Several states have attached criminal penalties

to these orders, and citizens are subject to fines or imprisonment if they leave their home for a

---

[1] A "wet market" is an outdoor market where people sell meat, poultry, and seafood alongside live,
wild animals.  *See id.*

nonessential reason. *See id.* On April 6, 2020, Governor Henry McMaster issued a "stay at home" order for South Carolina. *See* Executive Order No. 2020-21.

Although these restrictions may be slowing the spread of COVID-19, the disease is rapidly spreading across the United States. As of April 17, 2020, South Carolina has reported 4,086 COVID-19 cases and 116 deaths. Additionally, 31,647 deaths have been reported in the United States. People of all ages are susceptible to COVID-19; however, the elderly and people with underlying heath problems are particularly at risk for complications and hospitalizations. Tyler Sonnemaker, *More Than 70% of Americans Hospitalized With COVID-19 Had at Least 1 Underlying Health Condition, the CDC Says—Here's the Breakdown*, BUSINESS INSIDER (March 31, 2020), https://www.businessinsider.com/us-coronavirus-hospitalizations-underlying-health-conditions-cdc-2020-3. According to the Centers for Disease Control and Prevention ("CDC"), "[a]mong US patients hospitalized with COVID-19, 73% had at least one underlying condition." *Id.* "The most frequently reported preexisting conditions among US coronavirus patients were diabetes, chronic lung disease, and cardiovascular disease." *Id.* Additionally, "[t]he Chinese Center for Disease Control and Prevention found that death rates among patients with heart disease, diabetes, chronic respiratory disease, high blood pressure, and cancer were significantly higher than the nationwide average, while Italy's National Institute of Health found that 99% of people who died from COVID-19 had at least one preexisting condition." *Id.* The CDC recommends that individuals with underlying health conditions should follow strategies such as "social distancing" and handwashing in order to help slow the spread of COVID-19. *Id.*

Strictly following the CDC guidelines for "social distancing" and handwashing is difficult for any individual with an underlying disease; however, it is nearly impossible for individuals who are incarcerated. Jails and prisons, by their very nature, place inmates in close quarters with limited

abilities to self-quarantine.  Moreover, the close quarters in correctional facilities make the spread

of COVID-19 likely if an inmate or staff member is infected.  Local and national news outlets are

replete with stories of inmates infected with COVID-19 who are unable to be quarantined, be

tested, or seek rapid medical attention.  The Court acknowledges that the Spartanburg County

Detention Center ("SCDC") appears to be taking this pandemic seriously and is enacting some

protocols to prevent Defendant and other inmates from contracting the virus; however, as COVID-

19 continues to spread rapidly across the country, the number of cases in correctional facilities will

undoubtedly increase substantially.  The Court's particularized concern in this case is the well-

documented preexisting conditions that Defendant has, which make him far more likely to develop

serious complications if he is infected.

In light of the rapid spread of COVID-19, the Court is tasked with evaluating whether

Defendant qualifies for release under the strictures of the MDA.  As an initial matter, the Court

agrees with the Magistrate Judge's finding at the arraignment that there is clear and convincing

evidence that Defendant is not likely to flee or pose a danger to the safety of any other person or

the community.  Indeed, Defendant complied with all of the conditions of his bond, and the Court

likely would have continued Defendant on bond pending sentencing but for the requirements of

the MDA.  Therefore, the sole inquiry facing the Court is whether "exceptional reasons" exist

justifying release pending sentencing.

The PSR comprehensively details the Defendant's history and characteristics.

Specifically, the PSR notes that Defendant is a 50-year-old male with several serious health

conditions, including hypertension, gout, and diabetes.  The USPO obtained medical records from

the Spartanburg County Detention Center, which verify Defendant's medical conditions.  The

medical records note that Defendant takes metformin, prednisone, Tylenol, Aleve, probenecid, and

losartan for these conditions. Additionally, the PSR states that Defendant is 5 feet, 10 inches tall and weighs approximately 260 pounds. According to the National Heart, Lung, and Blood Institute ("NHLBI")—an Institute of the National Institutes of Health ("NIH")—Defendant has a Body Mass Index of 37.3, which means that he is clinically obese.[2]

The Court finds that Defendant's situation is clearly out of the ordinary, uncommon, and rare. While the "exceptional reasons" exception to the MDA should be employed sparingly, Defendant has met his burden under the unique circumstances of this case given his significant risk for developing serious complications if he is infected with COVID-19.[3]   The Court's ruling in this case is in accord with its Order granting a co-defendant with nearly identical medical conditions bond. *See United States v. Cunningham*, No. 8:19-cr-181-DCC-4, at ECF No. 587 (April 6, 2020). Moreover, the relief Defendant seeks is of a temporary nature, and the Court can employ restrictive measures during his period of release to ensure that he appears for sentencing. The Court is mindful that the purpose of bond is to ensure that defendants appear for trial or sentencing, not to punish defendants. Accordingly, the Court grants Defendant's Motion with the following conditions:

1. Defendant shall be released from custody on a $50,000 unsecured bond;

---

[2] According to the NHLBI, a BMI of 30 or greater falls into the "obese" category. *See Calculate Your Body Mass Index*, NATIONAL HEART, LUNG, AND BLOOD INSTITUTE, https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm. Several experts have opined that obesity puts individuals at an increased risk for serious complications if infected with COVID-19.

[3] The Court has reviewed the cases cited by the Government in its Response in Opposition. In all but one of these cases, the District Judges addressed bond motions raising generalized concerns about the COVID-19 pandemic. The Court agrees that such a generalized concern, standing alone, falls far short of the "exceptional reasons" exception to the MDA. The other case cited by the Government did address a defendant with asthma; however, the court in that case denied bond because of the "defendant's criminal history and other past behavior." *See United States v. Pinckney*, No. 19-cr-986-TLW, at ECF No. 359.

2.  Defendant shall be subject to home incarceration and location monitoring utilizing Global Positioning Satellite technology;

3.  Defendant's counsel shall provide Pretrial Services with Defendant's home address so that his address can be cleared prior to his release;

4.  In accord with South Carolina's "stay at home" mandate and the terms of home incarceration, Defendant is not to leave his home absent a medical emergency or scheduled court appearance.  Defendant must notify the USPO immediately in the event of a medical emergency;

5.  Any bond violation will result in IMMEDIATE REVOCATION;

6.  Defendant's counsel is directed to fully review the conditions of Defendant's bond with the Defendant by telephone within 24 hours of release, and must file an affidavit on ECF stating that he has done so;

7.  The Court will reevaluate Defendant's bond after the immediate public health crisis abates.

### CONCLUSION

For these reasons, Defendant Eddie Lee Childs, Jr.'s Motion for Bond, ECF No. 596, is **GRANTED** as set forth above**.**

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

April 20, 2020
Spartanburg, South Carolina

8